**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| MARREN ATIENO LIECH,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN,<br>*Secretary of Homeland Security*,<br>TODD LYONS,<br>*Acting Director, U.S. Immigration and Customs Enforcement*,<br>NIKITA BAKER,<br>*Field Office Director, Baltimore Field Office, U.S. Immigration and Customs Enforcement*,<br>and<br>TODD BLANCHE, *Attorney General, in their official capacities*,<br><br>Respondents. | Civil Action No. 26-3114-TDC |

**MEMORANDUM OPINION**

Petitioner Marren Atieno Liech, who is currently in immigration detention, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 against the Secretary of Homeland Security, the Attorney General, the Acting Director of United States Immigration and Customs Enforcement ("ICE"), and the Director of the ICE Field Office in Baltimore, Maryland (collectively, "Respondents"). In the Petition, Liech seeks immediate release on the grounds that her detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(6). Liech also asserts that Respondents' failure to provide her with notice and an opportunity to be heard to contest her removal to a nation that is not her country of origin violates both the Due Process

Clause and the INA and its implementing regulations. After briefing, the Court held an evidentiary hearing on the Petition on September 15, 2026. For the reasons set forth below, the Petition will be GRANTED.

## BACKGROUND

Liech, who is 52 years old, is a native and citizen of Kenya. She first entered the United States on or before July 10, 2012. On that day, an immigration judge issued an order of removal against Liech but granted her withholding of removal to Kenya pursuant to 8 U.S.C. § 1231(b)(3), which bars a removal to a country when an individual's "life or freedom would be threatened in that country" for one of the enumerated reasons set forth in that statute. *Id.* Liech was released with employment authorization and conditions of supervision, and she asserts that in the 14 years since her removal order became final, Respondents did not seek to effectuate her removal to any country, and she has complied with all release conditions and maintained consistent employment and stable housing in Maryland.

On October 24, 2025, Liech appeared for a scheduled check-in appointment with ICE, at which Respondents informed her that she would be placed into the Intensive Supervision Appearance Program ("ISAP") and would be required to wear a GPS ankle monitor. On August 7, 2026, Liech was detained by ICE outside of her place of employment and taken to the ICE Field Office in Baltimore, Maryland before she was transferred to the Caroline Detention Center in Bowling Green, Virginia. Liech asserts, and Respondents do not dispute, that she has no criminal history and had complied with every condition of the ISAP prior to her detention.

Liech asserts that, at the time she was detained, she was not provided with notice of the reasons for the revocation of her release or what ICE intended to do with her, including whether it was seeking to remove her to a third country. Respondents have submitted a Notice of Revocation

of Release dated August 7, 2026 ("Notice of Revocation" or "Notice"), in which boxes were checked signifying that Liech's "release has been revoked pursuant to 8 C.F.R. § 241.13(i)" because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." Notice at 1, Ans. Ex. 4, ECF No. 11-4. The Notice also includes, in a line next to an unchecked box, the statement that "ICE is seeking a travel document to effect your expeditious removal to Cameroon." *Id.* at 2. However, the Proof of Service section of the Notice lacks Liech's signature or any notation that she was presented with the Notice but refused to sign it, and Liech denies receiving it.

On August 7, 2026, while still detained in Maryland, Liech filed the present Petition for a Writ of Habeas Corpus. On September 15, 2026, the Court held an evidentiary hearing at which Vu Cam, the Acting Unit Chief of the ICE Removal Management Division, testified that Cameroon has agreed to accept third-country removals from the United States and has received multiple flights pursuant to that agreement. In December 2025, Cameroon and the United States entered into a written agreement under which Cameroon stated that it would accept the transfer of certain third-country nationals from the United States to Cameroon. In that agreement, Cameroon provided the assurance that "it intends to treat any third-country nationals transferred from the United States to the Republic of Cameroon in a manner that is in accordance with its obligations under . . . the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment . . . [and] any other international legal obligations," and that "third-country nationals . . . would not be subjected to persecution . . . or torture in the Republic of Cameroon or in any country to which the Government of the Republic of Cameroon may further transfer them." Cameroon Agreement at 1–2, Hrg. Ex. 20, ECF No. 21-8.

Cam further testified that on or about July 23, 2026, the Government of Cameroon agreed to accept a third-country removal of Liech to Cameroon. Following the evidentiary hearing, Respondents provided a July 20, 2026 document from the Ministry of External Relations of Cameroon attaching a list of "third country nationals who have been accepted for" a flight to Cameroon. Hrg. Ex. 101 at 1, ECF No. 26-1. Liech was included on that list.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2241, a United States district court may grant a petition for a writ of habeas corpus if a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the Petition, Liech argues that (1) her detention violates the INA on the grounds that it is not reasonably foreseeable that she will be removed to Cameroon, or any other country, in violation of 8 U.S.C. § 1231(a)(6) as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) Liech's removal to Cameroon at this time would violate Liech's right to due process of law under the Fifth Amendment because Respondents failed to provide Liech with notice of the proposed country of removal and an opportunity to seek withholding of removal or protection under the Convention Against Torture in relation to that country before an immigration judge; and (3) that her detention is improper because Respondents did not comply with the requirements of 8 C.F.R. § 241.13(i) in revoking her release and detaining her. As relief, she seeks immediate release from detention, subject to appropriate conditions of supervision, and an order barring Respondents from removing her to a third country without "constitutionally adequate notice and a meaningful opportunity to present any country-specific fear of removal." Reply at 18–19, ECF No. 13.

## I. *D.V.D. v. U.S. Department of Homeland Security*

In their Answer, as a threshold issue, Respondents argue that this case should be dismissed or stayed in light of *D.V.D. v. U.S. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025), a case in which the court granted a preliminary injunction relating to a certified class of individuals who are presently subject to a final order of removal and whom ICE "has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *Id.* at 378, 394. The preliminary injunction, which directed that certain procedural steps occur before any removal of a class member to a third country, *id.* at 392–93, was stayed by the United States Supreme Court. *See Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153, 2153 (2025). Since then, the district court granted judgment in favor of the plaintiffs, ruled that the class members have the right to meaningful notice and an opportunity to assert a country-specific claim against removal prior to being removed to any third country, and set aside as unlawful the third-country removal policy set forth in a March 30, 2025 United States Department of Homeland Security ("DHS") memorandum entitled "Guidance Regarding Third Country Removals" ("the DHS Guidance"). *D.V.D. v. U.S. Dep't of Homeland Security,* 821 F. Supp. 3d 102, 167–168 (D. Mass. 2026). Following the district court decision, the Government filed with the United States Court of Appeals for the First Circuit an emergency motion for a stay pending appeal, which was granted on March 16, 2026. On September 18, 2026, the First Circuit affirmed the final judgment and the relief described above. *D.V.D. v. U.S. Dep't of Homeland Security*, ___ F.4th ___, No. 26-1212, 2026 WL 2797801, at *14 (1st Cir. Sept. 18, 2026). With the First Circuit's stay dissolved, on September 24, 2026, the

Government filed with the Supreme Court an Application for a Stay of the *D.V.D.* final judgment entered by the district court, which remains pending.

Although the parties agree that Liech falls within the definition of the certified class, the Court finds that her membership in the class does not preclude consideration of the Petition. Where Liech primarily seeks relief from detention pending any removal, she seeks relief that is not sought on behalf of the class in *D.V.D.* *See, e.g.*, *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 383 (D. Md. 2025) (finding that because the petitioner "challenges his continued *detention,* which is not addressed in *D.V.D.*, a stay or dismissal of the entire case based on *D.V.D.* would be inappropriate").

To the extent that Liech also seeks an order directing Respondents to provide her with notice and a meaningful opportunity to contest removal to a third country on the basis of a fear or likelihood of persecution in such a third country, she seeks relief similar to that sought in *D.V.D.* *See D.V.D.*, 821 F. Supp. 3d at 167. As discussed below, however, the Court will primarily focus on the legality of Petitioner's continued detention prior to removal, rather than the removal itself. To the extent that the Court's rulings impact the issue of whether the contemplated third-country removal is lawful, the Court finds that it may address Liech's claims based on the reasoning in *Portela-Hernandez v. Trump,* No. 25-1633-BAH, 2026 WL 74042 (D. Md. Jan. 9, 2026), in which the court considered the petitioner's claims in part because abstaining from doing so in favor of the *D.V.D.* litigation would "effectively preclude . . . the relief" sought and would "potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class." *Id.* at *10 (quoting *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025)).

Here, the Court similarly finds that in light of the specific facts at issue, under which a final ruling in the *D.V.D.* litigation cannot be reached until the completion of proceedings before the

Supreme Court of indefinite duration, and Respondents have asserted that they will remove Liech to Cameroon in short order absent a ruling from this Court barring such a removal, a dismissal or stay of this case would effectively foreclose the relief sought by Liech because she would almost certainly be removed before the final resolution of *D.V.D.* Multiple courts have applied the same or similar reasoning in concluding that they can and should hear the claims of a petitioner who is a member of the *D.V.D.* class. *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1008 (S.D. Tex. 2025) (declining to dismiss claims on the grounds that the petitioner was a member of the *D.V.D.* class because to do so "would effectively preclude [the petitioner] from the relief he seeks entirely and potentially foreclose any relief that he could be entitled to as part of the *D.V.D.* class if he is removed before the class-wide claims are resolved"); *Santos Escobar v. Mullin*, No. GLR-26-1740, 2026 WL 1674825, at *5 (D. Md. June 10, 2026); *Takletsadik v. Guadian*, No. MJM-26-3148, 2026 WL 2614243, at *2 (D. Md. Sept. 3, 2026). Accordingly, the Court will not dismiss or stay the Petition pending the full resolution of *D.V.D.*

## II. Violation of Regulations

Among other arguments, Liech contends that her detention is unlawful both because she was detained without notice of the reason for her detention or a meaningful opportunity to respond, and because, in detaining her, ICE failed to follow its own regulations requiring such procedural protections. Specifically, Liech argues that Respondents failed to comply with the procedural requirements set forth in 8 C.F.R. 241.13(i), which govern the processes ICE must follow when revoking a noncitizen's release on conditions.

The Supreme Court recognized in *United States ex rel. Accardi v. Shaughnessy* ("*Accardi*"), 347 U.S. 260 (1954), that a federal agency's failure to comply with its own regulations may render the associated agency action unlawful. *Id.* at 268. Since then, courts have

recognized that under the *Accardi* doctrine, based on principles of procedural due process, "an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" upon a showing of prejudice. *United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999). Prejudice can be presumed when the regulations at issue consist of "an entire procedural framework, designed to ensure the fair processing of an action affecting an individual." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (approving of this analysis); *Morgan*, 193 F.3d at 267 (same).

Although Respondents argued in their Answer that Liech's detention complied with the separate but related requirements in 8 C.F.R. § 241.4(*l*), which generally apply to revocations of release, at the hearing on the Petition, they acknowledged, as stated explicitly in the Notice of Revocation, that Liech's release was revoked pursuant to 8 C.F.R. § 241.13(i). This regulation governs revocation of release in cases where the noncitizen was initially released from ICE detention pursuant to a determination by ICE that removal was not reasonably foreseeable and allows ICE to revoke the release "on account of changed circumstances" that create a "significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

Although Liech argues that Respondents violated multiple requirements within 8 C.F.R. § 241.13(i), the Court will focus on two. 8 C.F.R. § 241.13(i) requires that when a noncitizen is re-detained, (1) ICE must notify the individual of the reason that release is being revoked; and (2) ICE must provide the noncitizen with an opportunity to respond to those reasons through an informal interview. 8 C.F.R. 241.13(i)(3) (requiring that upon revocation, a noncitizen "will be notified of the reasons for revocation of his or her release" and that ICE "will conduct an initial

informal interview promptly after his or her return to [ICE] custody" to afford "an opportunity to respond to the reasons for revocation stated in the notification"); *Vo v. Lyons*, No. 25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026) (stating that "8 C.F.R. § 241.13 require[s], at minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond").

Here, the record shows that ICE failed to meet these requirements. As to notice of the reasons for revocation, ICE must provide "a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Mejia v. U.S. Immigr. & Customs Enf't & Removal Operations*, 828 F. Supp. 3d 273, 280 (D.N.H. 2026). The notice "must provide real, specific, concrete information that a noncitizen could actually respond to." *Hashemi v. Noem*, 809 F. Supp. 3d 1027, 1035 (C.D. Cal. 2025). In her declaration, Liech has stated that when she was re-detained, she did not receive any notice of the reasons for the revocation of her release. Although the Notice of Revocation submitted by Respondents arguably provided a reason for the revocation by including language suggesting a possible removal to Cameroon, Liech further stated in her declaration that although an ICE officer came into her cell holding a form, presumably the Notice of Revocation, when she told him that she would not sign a document before she spoke to her attorney, he did not show it to her or read it to her. Significantly, the Notice of Revocation lacks a signature from Liech in the "Detainee Signature" space in the "Proof of Service" section, and there is no notation about a refusal to sign. Notice at 1. Although Respondents had the opportunity to present evidence at the hearing to rebut Liech's assertion, they failed to do so. Rather, when asked at the evidentiary hearing how Respondents could establish that Liech received notice of the reasons for the revocation, Respondents' counsel stated that outside of the copy of the Notice itself, "I don't have that

established." The Court therefore finds that Liech was not presented with the Notice of Revocation and was not otherwise informed of the reasons for the revocation of release. Accordingly, Respondents failed to comply with their own notice requirement as set forth in 8 C.F.R. § 241.13(i)(3).

As for the requirement that ICE provide an opportunity to respond to the reasons for revocation, Respondents have submitted a record showing that ICE officers appear to have attempted to conduct an informal interview with Liech, but it did not occur because Liech declined to make any statements without having her attorney present. Although such an invocation of the right to counsel may explain the lack of a robust informal interview, the Court does not find that it demonstrates that ICE complied with the requirement of an informal interview providing an opportunity to respond to the reasons for revocation. 8 C.F.R. § 241.13(i) explicitly provides that the purpose of the informal interview is to allow the detainee an opportunity to respond to and refute the reasons behind the revocation of release. *See id.* Where Liech was not given adequate notice of the reasons for the revocation, particularly that there was a plan to remove her to Cameroon, the offer of an informal interview cannot be deemed to constitute an opportunity to respond to those reasons and thus to satisfy the regulatory requirement of such an opportunity. *See Hashemi*, 809 F. Supp. 3d. at 1035 (finding that no valid informal interview occurred where the detainee "was not given the reasons for revocation" and therefore "could not have meaningfully responded to them at this alleged informal interview"); *Mejia*, 828 F. Supp. 3d at 281 ("The basis for revoking a noncitizen's release must be communicated to the noncitizen at a time and in a manner that permits him to marshal evidence demonstrating that his liberty ought not be restrained.").

This Court has previously determined that 8 C.F.R. § 241.13(i) was promulgated with the purpose of protecting ICE detainees' due process rights. *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025). The Court incorporates that analysis here. Thus, where Respondents violated their own regulations in revoking Liech's release without providing proper notice of the reasons for revocation and an opportunity to respond to those reasons through an informal interview, *see* 8 C.F.R. § 241.13(i)(2), and such a regulation was put in place to provide due process, the Court concludes that the re-detention of Liech was unlawful under the *Accardi* doctrine and thus must be set aside. *See Morgan*, 193 F.3d at 266–67.

**III. Due Process**

Liech also argues that she should be released from detention because her removal is not reasonably foreseeable, which makes her continued detention unlawful. As an initial matter, Liech is detained pursuant to 8 U.S.C. § 1231(a). That provision establishes that, upon the issuance of a final order of removal to a noncitizen, the individual shall be removed "within a period of 90 days," a time period referred to in the statute as the "removal period," and shall be detained during the removal period. *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')."); 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."); *Mestanek v. Jaddou*, 93 F.4th 164, 170–71 (4th Cir. 2024) (noting that the Homeland Security Act of 2002 largely transferred the Attorney General's authority over federal immigration laws to the Secretary of Homeland Security). Next, § 1231(a) requires that noncitizens who do not leave the United States or are not removed within the removal period, "pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). However, certain noncitizens, such those who are inadmissible under 8 U.S.C. § 1182, may be

detained beyond the removal period. *See* 8 U.S.C. § 1231(a)(6). There is no dispute that Leich is subject to this provision.

In *Zadvydas*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6) authorizes detention of a noncitizen subject to a removal order "indefinitely beyond the removal period or only for a period reasonably necessary to secure the alien's removal." *Zadvydas*, 533 U.S. at 682. In that case, the petitioners had received removal orders but were detained past their respective removal periods in part because their native countries and other countries with which they had some familial ties had refused to accept them. *See id.* at 684–86. Recognizing the "serious constitutional problem arising out of a statute that, in these circumstances, permits an indefinite, perhaps permanent, deprivation of human liberty," *id.* at 692, the Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Court thus directed federal habeas courts to determine "whether the detention in question exceeds a period reasonably necessary to secure removal" and to "measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* If removal is not "reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.

The Court acknowledged, however, that "review must take appropriate account of the greater immigration-related expertise of the Executive Branch" and that doing so "will often call for difficult judgments." *Id.* at 700. To limit "the occasions when courts will need to make" such judgments, the Court recognized a "presumptively reasonable period of detention." *Id.* After noting that Congress likely did not conclude that the 90-day removal period it established in 8 U.S.C. § 1231(a)(1) was sufficient to accomplish "all reasonably foreseeable removals," the Court established that the "presumptively reasonable period of detention" is six months, and stated that,

after that period, once a noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Here, where Liech was ordered removed by an immigration judge on July 10, 2012 and was granted withholding of removal that same day, the 90-day removal period expired almost 14 years ago. *See Solis Nolasco v. Noem*, 820 F. Supp. 3d 398, 403–04 (D. Md. 2026) (stating that "the removal period begins when the removal order becomes administratively final" (citing 8 U.S.C. § 1231(a)(1)(B))). Although Liech was not detained following the issuance of the removal order and was instead released on conditions until her recent re-detention, where Respondents had the opportunity to pursue any available means of removal during both the removal period and the years from 2012 to the present but were apparently unable to identify a way to effectuate a lawful removal during those time periods, the six-month period has also expired, and Liech has thus demonstrated that prior to her detention, there was "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701; *see Solis Nolasco*, 820 F. Supp. 3d at 402, 405 & n.4 (finding that the petitioner's six-month period expired six months after the removal order became administratively final regardless of whether Petitioner was detained during that time period); *Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488, 500 (S.D.N.Y. 2009) (concluding that, where the Government was aware of a noncitizen's address but failed to pursue her removal until more than 15 months after the removal order was entered, "the removal period, as well as any presumptively reasonabl[e] six-month period of removal to which the Government may have been entitled" had expired six months after the entry of the removal order); *Tadros v. Noem*, No. 25-4108-EP, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding that the removal period began upon the affirmance of the removal order even though the petitioner was immediately released,

rather than when he was detained 16 years later, and rejecting the argument that the petitioner could not obtain habeas relief because he had not yet been in detention for six months). In their Answer, Respondents do not contest that they have the burden to demonstrate that removal is now reasonably foreseeable.

Liech has argued that her removal is still not reasonably foreseeable because Respondents have not provided sufficient evidence that the Government has made a specific arrangement to remove her to Cameroon in the near future. Although Respondents' initial submission was limited to a vague declaration by Acting Unit Chief Cam that lacked specificity, Respondents have since provided documentation that appears to show that Cameroon has agreed to accept Liech pursuant to a third-country removal. The Court need not decide whether, as a factual matter, such a removal is likely to occur in the reasonably foreseeable future absent court intervention because, as discussed below, it agrees with Liech on her related argument that such a removal would violate due process.

**A. Third-Country Removal Procedures**

Respondents have acknowledged that in relation to Liech, they are proceeding under the guidance set forth in the March 30, 2025 DHS Guidance relating to the potential removal to third countries of noncitizens who are subject to final orders of removal but who cannot be removed to their home countries. Under this Guidance, if DHS has received "diplomatic assurances" from a third country that noncitizens removed to that country "will not be persecuted or tortured," and the State Department finds those assurances to be credible, a noncitizen with a final order of removal "may be removed without the need for further procedures." DHS Guidance at 1–2, Ans. Ex. 1, ECF No. 11-1. Thus, where Respondents have asserted that Cameroon has provided such credible diplomatic assurances, they plan to remove Liech on the next available flight for third-country

removals to Cameroon, without any additional process. Liech argues that due process requires meaningful notice of the third country to which removal is designated to occur, and a meaningful opportunity to seek protection from removal to that specific country by presenting her country-specific fear of persecution or torture during a reasonable fear interview before an asylum officer and, if necessary, at a hearing before an immigration judge.

It is "well established" that the Fifth Amendment entitles noncitizens to due process of law in the context of removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993); *United States v. Lopez-Collazo*, 824 F.3d 453, 460–61 (4th Cir. 2016). Here, the relevant question is whether due process requires more than diplomatic assurances that a noncitizen will not be subjected to persecution or torture, and a general credibility assessment of those assurances, before Liech can be removed to Cameroon. To make this determination, the Court considers the three-factor test outlined in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Applying this analysis, multiple courts have concluded that prior to a third-country removal of a noncitizen with a final order of removal to a home country and withholding of removal or some other bar on removal to that country, due process requires that the noncitizen be provided with a reasonable fear interview before an asylum officer with the opportunity to have a negative fear determination reviewed by an immigration judge. *See, e.g.*, *Portela-Hernandez,* 2026 WL 74042, at *11–12; *Takletsadik*, 2026 WL 2614243, at *4; *Cruz Medina v. Noem,* 806 F. Supp. 3d

536, 548–552 (D. Md. 2025) (applying the *Mathews* test and finding a likelihood of success on the merits of the due process claim). Upon consideration of such case law, the Court applies the *Mathews* test and reaches the same conclusion.

First, the private interest affected by official action is Liech's interest in not being removed to a country where she could face persecution or torture. Through her attorney, Liech has expressly requested a reasonable fear interview to discuss her fear of removal to Cameroon, which is based in part on the risk of transfer to Kenya, the country to which she has withholding of removal. This interest is "precisely the type of interest that courts consistently have held is significant enough to justify procedural protections to ensure that individuals who are actually entitled to withholding of removal under § 1231(b)(3) or the Convention Against Torture receive such protection." *Cruz Medina*, 806 F. Supp. 3d at 549; *Takletsadik*, 2026 WL 2614243, at *3. Indeed, the fact that Congress has provided protections for such an interest in the form of withholding of removal, 8 U.S.C. § 1231(b)(3), and the adoption of the Convention Against Torture, demonstrate that Liech's private interest is one that is properly the subject of due process protections. *See Cruz Medina*, 806 F. Supp. 3d at 549.

Second, the risk of erroneous deprivation is high under the procedures described in the DHS Guidance. Where noncitizens subjected to a third-country removal, such as Liech, typically already have a fear of persecution or torture in their home country such that removal there is already precluded, third-country removals present a significant risk of erroneous deprivation based on the potential for the noncitizens to be transferred to their home countries. The procedural protections available to Liech, however, are limited to the "diplomatic assurances" from Cameroon that noncitizens subjected to a third-country removal "will not be subjected to persecution or torture in Cameroon nor in any country they may be further transferred to." Cam Decl. ¶ 6, Ans.

Ex. 2, ECF No. 11-2. Although these assurances specifically contemplate the potential for transfer to another country, Respondents have provided no facts demonstrating how Cameroon could ensure the safety of Liech or others subjected to similar third-country removals once they are outside of the jurisdiction of the Government of Cameroon. The risk is further heightened upon consideration of the reports submitted by Liech that provide accounts of one individual subjected to a third-country removal to Cameroon who nevertheless faced persecution in Cameroon, Hrg. Ex. 11 at 3, ECF No. 21-3, two others removed to Cameroon who were reportedly pressured to return to their countries of origin, Reply Ex. C at 2, ECF No. 13-3, and 36 others sent to Cameroon who reportedly face a risk of deportation to their home countries from which they had court-ordered protections against removal from the United States, Hrg. Ex. 12 at 3, ECF No. 21-4.

Courts have found that in the face of such a risk, a reasonable fear interview by an asylum officer is insufficient to provide procedural protection absent the availability of a review of a negative fear determination by an immigration judge. *See Cruz Medina*, 806 F. Supp. 3d at 549 (finding that where an individual "alleges that he would be persecuted or tortured if removed to a particular country, a single review by an asylum officer creates an unacceptably high risk of erroneous deprivation"); *Portela-Hernandez*, 2026 WL 74042, at *3, *11. Indeed, INA regulations provide for both a reasonable fear interview and immigration judge review in relation to a potential claim of a fear of persecution or torture in a noncitizen's home country. *See* 8 C.F.R. §§ 208.31(g), 1208.31(g). Here, in light of the diplomatic assurances, the DHS Guidance does not even require a reasonable fear interview by a DHS asylum officer. In the present case, Liech received no reasonable fear interview, and although an informal interview upon revocation of release is not intended to constitute a reasonable fear interview, as discussed above, Liech was not informed that her release was revoked in order to remove her to Cameroon, so she did not even have that limited

opportunity to raise specific concerns about such a removal. Under these circumstances, the Court finds that the risk of erroneous deprivation is high.

Third, the Court must assess the balance between mitigating the erroneous deprivation of Liech's private interest and the Government's fiscal and administrative burden of providing additional procedural protections. *See Mathews*, 424 U.S. at 347. Here, the risk of erroneous deprivation of protection from persecution or torture can be reduced through the longstanding procedures requiring a reasonable fear interview and review by an immigration judge prior to removing individuals to their home countries. *See Cruz Medina*, 806 F. Supp. 3d at 550. As another judge in this District has noted, these additional procedures "would likely result in some delay and administrative burden, '[b]ut some delay and administrative burden is inherent in due process.'" *Barrientos v. Baker*, No. MJM-26-0984, 2026 WL 1166361, at *4 (D. Md. Apr. 8, 2026) (quoting *Cruz Medina*, 806 F. Supp. 3d at 551). Where the proposed procedures are already established and used for the analogous purpose referenced above, *see, e.g.,* 8 C.F.R. §§ 208.31(g), 1208.31(g), and thus do not require Respondents to venture into uncharted procedural waters, the Court finds that the burden on Respondents is limited and is outweighed by the likely significant reduction in the risk of deprivation of rights to noncitizens such as Liech.

The Court therefore agrees with the substantial number of district courts that the summary third-country removal of a noncitizen such as Liech with no procedural protections other than the described diplomatic assurances, and without a reasonable fear interview and the availability of review by an immigration judge of a negative fear determination, violates due process.

**B. Reasonable Foreseeability**

Having determined that due process requires that Liech receive a reasonable fear interview and, if necessary, review of a negative fear determination by an immigration judge prior to any

third-country removal, the Court must consider whether her removal is, in fact, reasonably foreseeable under *Zadvydas*.

Several courts have concluded that because of the need for such procedures to be conducted prior to a third-country removal, the removal of the petitioner is not reasonably foreseeable. In *Portela-Hernandez*, the court held that even after the petitioner received a reasonable fear interview, removal was not reasonably foreseeable because the Government maintained the position that no additional process was due. *Portela-Hernandez*, 2026 WL 74042, at *14. Because the required immigration judge review was not expected to occur, a lawful removal was not reasonably foreseeable, and there was no identifiable end to the petitioner's detention. *Id.* In *Takletsadik*, the court reached the same conclusion under similar facts, because the petitioner faced "indefinite and potentially permanent detention" awaiting such review. *Takletsadik*, 2026 WL 2614243, at *4 (quoting *Portela-Hernandez*, 2026 WL 74042, at *14).

Here, Liech is in the same position as the petitioners in those cases except that she is further away from a lawful removal because Respondents' position is that she is entitled to neither a reasonable fear interview nor immigration review of a negative fear determination. Further, in light of the related but separate *D.V.D.* litigation, in which the Government has maintained that additional procedural protections are not required for third-country removals and is seeking Supreme Court review, it stands to reason that Respondents cannot reasonably be expected to change their position and start providing the additional due process protections that this Court deems to be required until after the completion of that litigation, which will likely continue for a substantial additional period of time. Under these circumstances, the Court finds that Liech cannot be lawfully removed in the reasonably foreseeable future such that her detention violates 8 U.S.C.

§ 1231(a)(6). *See Zadvydas* 533 U.S. at 699–700; *Portela-Hernandez*, 2026 WL 74042, at *14; *Takletsadik*, 2026 WL 2614243, at *4.

For this reason, and because the re-detention of Liech violated Respondents' own regulations, *see supra* part II, the Court will grant the Petition, order Liech's release, and order that Respondents may not re-detain her (1) unless they comply with the requirements of 8 C.F.R. § 241.13(i); and (2) until after she has received a reasonable fear interview and, if she seeks it, review of the fear determination by an immigration judge. Accordingly, the Court need not address the parties' remaining arguments.

**IV. Attorney General**

Respondents separately contend that Attorney General Todd Blanche is not a proper respondent because he does not have custody over Liech or the ability to produce her before the Court. In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court held that "the proper respondent to a habeas petition is the person who has custody over [the petitioner]." *Id.* at 434–35. However, *Padilla* explicitly left open the question of "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." *Id.* at 435 n.8. Courts have been divided on whether *Padilla*'s immediate custodian rule applies to immigration habeas petitions at all. *See Jarpa v. Mumford*, 211 F. Supp. 3d 706, 723–24 (D. Md. 2016) (collecting cases). Some courts have held that the immediate custodian rule articulated in *Padilla* does not apply in such cases because the petitioner would be permitted to sue only the warden of the detention facility, who lacks the legal authority to grant relief. *See Solis Nolasco*, 820 F. Supp. 3d at 398, 408 (quoting *Jarpa*, 211 F. Supp. 3d at 724).

Notably, although Liech may be in the custody of ICE, the Attorney General has a role in relation to the present circumstances because the United States Department of Justice includes the

Executive Office of Immigration Review, which in turn includes the immigration courts. 8 C.F.R. §§ 1003.0(a), (b). Where the law on this issue is unsettled, and the Court has found that Liech cannot be re-detained for removal to a third country unless she is first provided with a reasonable fear interview and, if she seeks it, review of the fear determination by an immigration judge, the Court cannot presently conclude that the Attorney General is not a proper respondent. The Court will therefore decline to dismiss the Attorney General from this case.

**V. Conditions of Release**

Finally, in her reply brief, Liech seeks an order requiring Respondents to employ a less restrictive alternative to GPS ankle monitoring. Liech's detention and release are governed by 8 U.S.C. § 1231 and 8 C.F.R. § 241.13, which grant to ICE the authority to impose the release conditions prior to any review of detention by an immigration judge. *See* 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.13(b). For this reason, and where Liech offers no legal basis for the Court to provide this relief, the request will be denied.

**CONCLUSION**

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be GRANTED, subject to the terms of the separate Order to be issued.

Date: September 28, 2026

THEODORE D. CHUANG
United States District Judge